1  GREGORY P. DRESSER (CA SBN 136532)
   GDresser@mofo.com
2  NATALIE NAUGLE (CA SBN 240999)
   NNaugle@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415-268-7000
5  Facsimile: 415-268-7522

6  Attorneys for Defendants
   FIRST PREMIER BANK and PREMIER
7  BANKCARD

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 BETTY MARQUEZ, individually and        Case No.: CV10 6898 GHK (OPx)
   on behalf of all others similarly situated,
13                                         **CLASS ACTION**
                Plaintiff,
14                                         **DEFENDANTS FIRST PREMIER
        v.                                 BANK AND PREMIER
15                                         BANKCARD'S MEMORANDUM
   FIRST PREMIER BANK OF SOUTH             OF POINTS AND AUTHORITIES
16 DAKOTA and PREMIER                      IN SUPPORT OF MOTION TO
   BANKCARD,                               DISMISS**
17
                Defendants.               Date:    March 21, 2011
18                                        Time:    9:30 a.m.
                                          Courtroom: 650
19                                        Judge:   Hon. George H. King
                                          Complaint filed:  September 16, 2010
20

21

22

23

24

25

26

27

28

sf-2940719

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

I.      INTRODUCTION ..................................................................1

II.     RELEVANT BACKGROUND.................................................2

III.    LEGAL STANDARD ............................................................5

IV.     ARGUMENT.........................................................................7

        A.      **The CLRA Does Not Apply to Credit Protection.**..........7

        B.      Plaintiff's CLRA and UCL Claims Must Be Dismissed Because
                Plaintiff Has Failed to Satisfy Her Pleading Burden. ........10

        C.      Because Plaintiff Fails to Allege Unlawful or Unfair Business
                Practices, She Has No UCL Claim. ...................................11

                1.      Plaintiff Fails to Allege Any "Unlawful" Business
                        Practices. ...................................................12

                2.      Plaintiff Fails to Adequately Allege Any "Unfair"
                        Business Practices..........................................12

        D.      Plaintiff Has No "Claim" for Unjust Enrichment. ............16

V.      CONCLUSION....................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................5, 6, 12, 15

*Augustine v. FIA Card Servs., N.A.*,
   485 F. Supp. 2d 1172 (E.D. Cal. 2007) ..............................................................8

*Baga v. Hewlett-Packard Co.*,
   No. C 09-05946 RS,
   2010 U.S. Dist. LEXIS 59747 (N.D. Cal. June 16, 2010)...................................6

*Ball v. FleetBoston Fin. Corp.*,
   164 Cal. App. 4th 794, 79 Cal. Rptr. 3d 402 (2008) ...........................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................5, 6, 15

*Berry v. Am. Express Publ'g, Inc.*,
   147 Cal. App. 4th 224, 54 Cal. Rptr. 3d 91 (2007) ...............................7, 8, 9, 10

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v.
   County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).....................................13

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th  812, 66 Cal. Rptr. 3d 543 (2007) .........................................14

*Burch v. Bricker*,
   2006 SD 101, 724 N.W.2d 604 (S.D. 2006)......................................................16

*Daughterty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006) .........................................13

*Fairbanks v. Super. Ct.*,
   46 Cal. 4th 56, 92 Cal. Rptr. 3d 279 (2009) ........................................................9

*Farmers Ins. Exch. v. Super. Ct.*,
   2 Cal. 4th 377, 6 Cal. Rptr. 2d 487 (1992) ........................................................12

sf-2940719

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*,
   No. 04-cv-147, 2007 WL 1994057 (S.D. Cal. Apr. 18, 2007)..........................16

*Gutierrez v. Wells Fargo & Co.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009)....................................................7, 8, 9, 10

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008) ...................................12, 14

*In re Firearm Cases*,
   126 Cal. App. 4th 959, 24 Cal. Rptr. 3d 659 (2005) ..........................................14

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ................................................................................7

*In re Late Fee & Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007)....................................................6, 8, 15, 16

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................................3

*Johns v. Bayer Corp.*,
   No. 09CV935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ................................15

*Johnson v. Larson*,
   2010 SD 20, 779 N.W.2d 412 (S.D. 2010)........................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................6, 7, 10, 11

*Krantz v. BT Visual Images, L.L.C.*,
   89 Cal. App. 4th 164, 107 Cal. Rptr. 2d 209 (2001) .........................................12

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009)....................................................6, 7, 11

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347 (2003) ................................15, 16

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ..............................................................................16

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008) ..........................11, 12, 14

iii

sf-2940719

*Rand v. Am. Nat'l Ins. Co.*,
   No. C-09-0639, 2009 WL 2252115 (N.D. Cal. July 28, 2009) .........................12

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*,
   290 F.3d 1055 (9th Cir. 2002) ...........................................................................12

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .............................................................................13

*Tietsworth v. Sears, Roebuck & Co.*,
   No. 5:09-CV-00288 JF (HRL),
   2009 U.S. Dist. LEXIS 98532 (N.D. Cal. 2009) ................................................13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .............................................................................3

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................6, 7, 10

*Walker v Equity 1 Lenders Group*,
   2009 WL 1364430 (S.D.Cal. 2009) ...................................................................15

*Wolph v. Acer Am. Corp.*,
   No. C 09-01314, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009).................10, 15

*Wright v. Gen. Mills, Inc.*,
   No. 08cv1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)...................*passim*

**STATUTES**

Cal. Bus. & Prof. Code
   § 17200..............................................................................................................11

**OTHER AUTHORITIES**

Assemb. B. No. 292, 1970 Reg. Sess. (Cal. Jan. 21, 1970)
   (as amended Aug. 7, 1970) .................................................................................8

I.     **INTRODUCTION**

Plaintiff purports to represent a California class and asserts consumer protection claims against First Premier Bank[1] and Premier Bankcard, but Plaintiff herself has failed to state any claim.  Her Complaint rests entirely on bare allegations that First Premier sells a product called Credit Protection through "misleading" and "incomplete statements" and places "multiple bureaucratic hurdles" in the way of individuals seeking benefits through the program.  Absent from her Complaint, however, is any explanation of why what she was told about Credit Protection and its benefits or limitations was misleading, or what "multiple bureaucratic hurdles" allegedly prevented her from obtaining benefits under the plan.

Plaintiff's Complaint asserts three causes of action, but she is not entitled to relief under any of them.  First, Plaintiff has no claim under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ("CLRA"), as this statute does not apply to the extension of credit or money.  Second, Plaintiff has not stated any claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), as Plaintiff has not adequately pled that First Premier engaged in any unlawful or unfair business practice that caused her alleged injury.  Finally, Plaintiff cannot maintain her cause of action for unjust enrichment, as California recognizes no such "claim."  Because Plaintiff has failed to adequately allege any cause of action, the Court should dismiss her First Amended Complaint ("Complaint" or "FAC") in its entirety.[2]

---

[1] Incorrectly sued as "First Premier Bank of South Dakota."

[2] Simultaneously with this Motion to Dismiss, Defendants have filed a Motion to Compel Arbitration, or in the Alternative, for a Stay of Proceedings.  A decision by this Court granting either the Motion to Compel or to Stay Proceedings would render a decision on this Motion to Dismiss unnecessary.

1

sf-2940719

## II.   RELEVANT BACKGROUND

Plaintiff filed this action on September 16, 2010, seeking to recover damages against First Premier Bank and First Premier Bankcard (collectively "First Premier").[3]   Plaintiff's claims are based on her alleged enrollment in Premier Credit Protection ("Credit Protection"), an optional benefit offered in connection with a customer's First Premier credit card that affords partial or full debt cancellation under defined circumstances.   Plaintiff argues that she is entitled to relief on the basis that First Premier "sells Credit Protection through misleading statements, incomplete statements, and misrepresentations" in that "First Premier does not ask [cardholders] any qualifying questions to determine if the [cardholder] is eligible for Credit Protection benefits or to determine if [the cardholder] will ever be eligible for Credit Protection benefits."  (FAC ¶¶ 6, 8.)

Plaintiff further alleges that First Premier "does not disclose the terms and limitations of Credit Protection until after the consumer accepts and is charged for the product" and thereafter sends customers a "Post-Enrollment Letter" that "contain[s] a list of exclusions or grounds for denial of benefits."  (FAC ¶¶ 9, 43, 45.)  Although Plaintiff acknowledges that the fulfillment package sent to cardholders after enrollment sets forth Credit Protection's terms and limitations, she claims, without elaboration, that those terms are "misleading, incomplete, meaningless and incomprehensible to the average consumer."  (FAC ¶ 9.)  Plaintiff also alleges, in conclusory fashion, that:

> (1) First Premier charges for a product that is "virtually worthless" to some customers because there are restrictions on eligibility for benefits and because claims must be processed before benefits can be paid.  (FAC ¶ 15, 22.)
>
> (2) First Premier fails to investigate the individual circumstances of each consumer who chooses to enroll in Credit Protection to determine if they are, or ever will be,

---

[3] Plaintiff filed her First Amended Complaint ("FAC") on December 16, 2010.

sf-2940719

eligible for any and all Credit Protection benefits.  (FAC ¶ 8, 38.)

(3) "First Premier manipulates the claims payment process in order to increase profits by its various strategies that result in the denial of claims." (FAC ¶ 20.)

(4) Plaintiff enrolled in Credit Protection "in August 2009."  (FAC ¶ 74.)

(5) "A true and accurate description of the Credit Protection program was not available to Plaintiff or to any First Premier cardholder at the time of sale or by documents provided thereafter."  (FAC ¶ 52.)

(6) Shortly after enrollment, Plaintiff was provided with a "Post-enrollment Letter" and the Premier Credit Protection contract, which set forth the terms and conditions of Credit Protection.  (FAC 43-44.)[4]

(7)  Credit Protection includes a "credit life" feature that "will cancel the purchaser's account balance in the event of death."  (FAC 49.)

(8) When Plaintiff applied for Credit Protection benefits in February 2010, she was denied benefits.  (FAC ¶ 78.)

---

[4] Both documents are repeatedly referenced throughout Plaintiff's Complaint, and are thus incorporated by reference into the Complaint in their entirety.  (*See e.g.* FAC ¶¶ 43-45, 49.)  Pursuant to the doctrine of incorporation by reference, a court may consider documents whose contents are alleged in a complaint in ruling on a motion to dismiss.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (even if a document is not attached to a complaint, it "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).  Because Plaintiff's cardholder agreements with First Premier are central to her claims, and repeatedly referenced throughout her Complaint, the Court may consider them in ruling on this motion. Exhibits 1 and 2 are true and accurate copies of the cardholder agreements governing Plaintiff's two credit card accounts with First Premier.  Additionally, Plaintiff refers to and selectively quotes from the Credit Protection "Post-Enrollment Letter" or Welcome Kit in her Complaint, and thus it is appropriate for the Court to consider the contents of the Welcome Kit in ruling on this motion. Exhibits 3 and 4 are true and correct copies of the Credit Protection Welcome Kits sent to Plaintiff after she enrolled her credit cards in August 2009 and February 2010.  The contract that gives effect to Credit Protection begins on page 23 of Exhibit 3 and page 28 of Exhibit 4.

sf-2940719

1    While her Complaint refers to pre- and post-purchase representations

2    allegedly made by First Premier in connection with the sale of Credit Protection,

3    Plaintiff fails to offer any explanation regarding why those representations were

4    false or misleading.  (*See, e.g.* FAC ¶ 18, 36-37, 40, 44-45.)  For example, Plaintiff

5    alleges that First Premier represented to cardholders that they would "now have the

6    added security of knowing that your credit card payments may be canceled or

7    reduced upon the occurrence of any of the following events *as they are defined  in*

8    *this Contract*: Loss of Life * Job Loss * Disability * Family Leave *

9    Hospitalization."  (FAC ¶ 45 (emphasis added).)  Plaintiff, however, does not claim

10   that First Premier acted inconsistently with this representation.  Nor does she

11   explain why this statement was false or misleading.

12   Similarly, Plaintiff asserts that First Premier's representations "created the

13   illusion that when an enrolled purchaser experienced a covered loss and informed

14   First Premier of the event they would receive benefits." (FAC ¶ 40.)  Again,

15   Plaintiff fails to offer any explanation as to why the "illusion" that Credit Protection

16   offers benefits in the event of a "covered loss" was misleading.  And although

17   Plaintiff asserts she was enrolled in Credit Protection but denied benefits in

18   February 2010 when she became unemployed, absent from her Complaint is any

19   allegation that she qualified for the benefits she applied for or that she followed the

20   requisite claims procedures.  (FAC ¶ 78.)

21   As Plaintiff acknowledges (FAC ¶¶ 9, 43-45, 63), cardholders who choose to

22   enroll in Credit Protection receive a "Post-Enrollment Letter" or Welcome Kit

23   shortly after enrollment and before they are obligated to begin paying for the

24   benefit.  The Welcome Kit contains (i) a welcome letter, and (ii) the Premier Credit

25   Protection Contract that gives effect to Credit Protection.  (FAC ¶¶ 44-45; *see* Exs.

26   3 and 4.)  The Welcome Kit explains the categories of benefits that are available.

27   (Exs. 3 at 23 and 4 at 28.)  It also clearly and conspicuously discloses information

28   regarding Credit Protection, including but not limited to: (1) the cost of Credit

4

Protection; (2) that enrollment in Credit Protection is entirely optional and may be cancelled at any time; (3) how to cancel enrollment; (4) that, in the event the enrollee cancels Credit Protection within 30 days of enrollment, any Credit Protection fee charged would be credited back; and (5) the circumstances under which First Premier may terminate an enrollee's enrollment in Credit Protection. (Exs. 3 at 23, and 4 at 28.)

With respect to eligibility requirements, the Welcome Kit prominently discloses the following on the first page of the contract under the heading "**IMPORTANT DISCLOSURES**":

> ***Eligibility requirements, conditions and exclusions.***
> There are eligibility requirements, conditions and exclusions that could prevent you from receiving protection under this Contract. You will find a complete explanation of the eligibility requirements, conditions and exclusions for each event in the General Conditions and Requirements Section and the Specific Conditions and Requirements Section of the Contract which begins on the next page.

(Exs. 3 at 23, and 4 at 28.) The following three pages of the contract then outline in clear and extensive detail the specific conditions and eligibility requirements for each and every "event" (loss of life, job loss, disability, family leave, hospitalization) covered by the contract. (Exs. 3 at 24-26, and 4 at 29-31.) With regard to eligibility requirements in the event that an enrollee loses his or her job, the Credit Protection contract sets forth "Exclusions from Protection," which include "self-employed individuals." (Exs. 3 at 25, and 4 at 30.)

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

sf-2940719

misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Where, however, a "complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" and warrants dismissal.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Accordingly, Plaintiff must assert facts plausibly suggesting entitlement to relief, and this burden is not satisfied by a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Wright v. Gen. Mills, Inc.*, No. 08cv1532, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009) (dismissing complaint that was "based on little more than conclusory and speculative factual content"); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007).  Although facts alleged in a complaint are assumed to be true, conclusory allegations are not facts, and a court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555).

Additionally, Federal Rule of Civil Procedure 9(b)'s "heightened pleading standards apply to claims for violations of the CLRA and UCL" where such claims are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122, 1125 (9th Cir. 2009); *Baga v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 U.S. Dist. LEXIS 59747, at *6 (N.D. Cal. June 16, 2010) ("Rule 9(b)'s heightened pleading requirements apply to claims for violations of CLRA and UCL where the claims are based on fraudulent conduct, such as . . . misstatements and fraudulent concealment[.]").  A claim is grounded in fraud where the plaintiff "allege[s] a unified course of fraudulent conduct" as the basis for the claim, such as a claim based upon alleged misrepresentations or nondisclosure. *Kearns*, 567 F.3d at 1125, 1127; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-08 (9th Cir. 2003);

6

1   *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("The

2   Ninth Circuit has recently clarified that claims of nondisclosure and omission, as

3   varieties of misrepresentations, are subject to the pleading standards of Rule 9(b).").

4       When such a claim is alleged, the plaintiff "must state with particularity the

5   circumstances concerning fraud," including the "who, what, when, where, and how

6   of the misconduct charged." *Kearns*, 567 F.3d at 1124 (internal quotations

7   omitted); *Wright*, 2009 WL 3247148, at *6. Where a claim is premised upon a

8   deceptive statement or omission, the plaintiff must "set forth an explanation as to

9   why [the] statement or omission complained of was false or misleading." *In re

10  GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by the

11  Private Securities Litigation Reform Act of 1995 on other grounds); *Marolda*, 672

12  F. Supp. 2d at 1001 ("Plaintiff must also state with specificity what made any of the

13  representations false."). With regard to omissions, "plaintiff must describe the

14  content of the omission and where the omitted information should or could have

15  been revealed, as well as provide representative samples of advertisements, offers,

16  or other representations that [she] relied on to make her purchase and that failed to

17  include the allegedly omitted information." *Marolda*, 672 F. Supp. 2d at 1002.

18  And it is not sufficient that the alleged misrepresentations or omissions be pled with

19  the requisite degree of particularity; rather, "the complaint as a whole must satisfy

20  the heightened pleading requirements of Rule 9(b)," including any allegations of

21  reliance. *Vess*, 317 F.3d at 1106; *Marolda*, 672 F. Supp. 2d at 1001.

22  **IV.   ARGUMENT**

23          **A.    The CLRA Does Not Apply to Credit Protection.**

24      Plaintiff cannot state a claim under the CLRA because Credit Protection is

25  nothing more an extension of credit or money, which does not qualify as "goods or

26  services" under the Act. *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224,

27  227, 54 Cal. Rptr. 3d 91 (2007) (CLRA not applicable to the extension of credit or

28  "credit transactions"); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 956-

7

57 (N.D. Cal. 2009) (CLRA not applicable to "extension of money").  Because the subject of Plaintiff's claim is outside the statute under which she seeks relief, her CLRA cause of action must be dismissed.

The inapplicability of the CLRA to the extension of credit or money is made clear in both the case law and the legislative history of the statute.  As originally drafted, the CLRA's definition of "consumer" included not only individuals who purchased goods and services, but also individuals who obtained "credit" or "money" for personal, family or household purposes.  *Berry*, 147 Cal. App. 4th at 230-31 (citing Assemb. B. No. 292, 1970 Reg. Sess. (Cal. Jan. 21, 1970) (as amended Aug. 7, 1970)).  Before passage, however, the Legislature deleted persons who obtained "credit" or "money" from the definition of "consumers" covered by the CLRA, evidencing an intent to narrow the scope of the statute to preclude its application to "extensions of credit unrelated to the purchase of any specific good or service."  *Id.*

Accordingly, in *Berry*, the California Court of Appeal held that "neither the express text of [the] CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act."  *Berry*, 147 Cal. App. 4th at 233.  In *Gutierrez*, the court determined that the CLRA was equally inapplicable to the extension of money in the form of overdraft protections offered to Wells Fargo customers in connection with their debit card accounts.  622 F.Supp. 2d at 957.  There, although Wells Fargo conceded that covering an overdraft was "not technically providing 'credit' to a customer" the court nonetheless concluded that the CLRA was inapplicable because "[m]uch like credit cards provide an extension of credit, an overdraft provides an extension of money."  *Id.*[5]  And although the California Supreme Court has yet to

---

[5] Other federal and state courts in California have reached the same result.  *See, e.g., Ball v. FleetBoston Fin. Corp.*, 164 Cal. App. 4th 794, 798, 79 Cal. Rptr. 3d 402 (2008); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 966 ("credit

(Footnote continues on next page.)

8

1  directly weigh in on the issue, the Court recently cited with approval the legislative

2  analysis employed by the *Berry* court in reaching its conclusion that the CLRA is

3  inapplicable to extensions of "credit" or "money".  *Fairbanks v. Super. Ct.*, 46 Cal.

4  4th 56, 61-62, 92 Cal. Rptr. 3d 279 (2009) (citing *Berry* for the proposition that

5  "deleting a specific provision from a proposed law generally reflects an intent that

6  the law not be construed to include the omitted provision").

7         Despite Plaintiff's attempt to cast Credit Protection as a "separate product

8  that is distinct from [the] issuance of credit" (FAC ¶ 3), the CLRA is inapplicable

9  here because Credit Protection not a "good" or "service".  Rather, Credit Protection,

10  like overdraft protection, is an extension of credit or money to First Premier

11  cardholders in conjunction with their credit card accounts that will cancel or reduce

12  minimum monthly payments under certain defined circumstances.  (FAC ¶ 15, 26,

13  45.)  In fact, allegations in Plaintiff's Complaint confirm that both the fees and

14  benefits associated with Credit Protection are inextricably linked to and dependent

15  upon the cardholder's credit card account with First Premier.  (*See ¶* FAC 5 ("First

16  Premier charges purchasers $.89 per hundred dollars of monthly account ending

17  balance on their First Premier credit cards"); ¶ 15 ("All this is required for a benefit

18  that typically is no more than a $25 to $30 waiver of minimum monthly

19  payments"); ¶ 40 (describing benefits as "including suspension of minimum

20  monthly payments"); ¶ 45 (noting Welcome Letter explains that cardholders "now

21  have the added security of knowing that your credit card payments my be canceled

22  or reduced upon the occurrence" of a specified event); ¶ 49 (noting that Credit

23

24  ───────────────────────────

25  (Footnote continued from previous page.)

26  card accounts are not 'goods or services' subject to [the CLRA]. . . .  Every federal
   court addressing the issue has followed this precedent."); *Augustine v. FIA Card*

27  *Servs., N.A.*, 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007) ("California law provides
   that the CLRA does not apply to credit card transactions").

28

1    Protection offers a "credit life" benefit that "will cancel the purchaser's account

2    balance in the event of death.").

3            Thus, like the overdraft fees in *Gutierrez*, Credit Protection is not a product

4    or service "separate and apart" from the related extension of credit, but is instead

5    simply an extension of money – a "credit transaction" that falls outside the scope of

6    the CLRA.  *See Berry*, 147 Cal. App. 4th at 233; *Gutierrez*, 622 F. Supp. 2d at 957.

7    Because Credit Protection qualifies as neither a "good" nor a "service," Plaintiff's

8    CLRA claim must be dismissed.

9            **B.    Plaintiff's CLRA and UCL Claims Must Be Dismissed Because**

10                   **Plaintiff Has Failed to Satisfy Her Pleading Burden.**

11           Plaintiff's claims under the CLRA, even if applicable, and under the UCL

12   must be dismissed because they are inadequately pled, as Plaintiff fails to allege the

13   "who, what, when, where, and how of the misconduct charged." *Wright*, 2009 WL

14   3247148, at *6 (internal quotations omitted).  In support of her claims, Plaintiff

15   alleges that First Premier marketed Credit Protection through "misleading

16   statements, incomplete statements, and misrepresentations" because "First Premier

17   does not ask [cardholders] any qualifying questions to determine if the[y are]

18   eligible for Credit Protection benefits or to determine if [the cardholder] will ever

19   be eligible for Credit Protection benefits."  (FAC ¶ 6, 8.)  Plaintiff further alleges

20   that First Premier violated the CLRA by "represent[ing] that its services had uses

21   and benefits which they did not have," by "represent[ing] that its services were of a

22   particular standard, quality, or grade when they were of another," and by

23   "advertis[ing] its services with intent not to sell [the service] as advertised."  (FAC

24   ¶¶ 115-117 (citing Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9)).)  As Plaintiff's

25   CLRA and UCL claims are based upon allegations of nondisclosure and

26   misrepresentation, such claims are "grounded in fraud" and "'must satisfy the

27   particularity requirement of Rule 9(b).'"  *Kearns*, 567 F.3d at 1126-27 (quoting

28   *Vess*, 317 F.3d at 1103-04); *Marolda*, 672 F. Supp. 2d at 1002 (clarifying that

                                                10

1    omission claims are grounded in fraud and therefore subject to Rule 9(b)'s

2    heightened pleading standard); *Wright*, 2009 WL 3247148 at *6; *Wolph v. Acer*

3    *Am. Corp.*, No. C 09-01314, 2009 WL 2969467, at *5 (N.D. Cal. Sept. 14, 2009).

4            Plaintiff's broad and conclusory allegations do little more than provide a

5    formulaic recitation of the bare elements of the claims sued upon and do not

6    provide the "who, what, when, where, and how" required by Rule 9(b).  Plaintiff

7    does not identify the "material terms" allegedly withheld or explain how and why

8    First Premier's representations were false or misleading.  It is not enough to

9    summarily allege that the Welcome Kit as a whole is a "prolix document" that is

10   "meaningless and incomprehensible to the average purchaser" or that First Premier

11   failed to adequately disclose Credit Protection's "terms, conditions, restrictions and

12   bureaucratic hurdles in the claims process" rendering it "virtually worthless."

13   (FAC ¶¶ 16, 22, 63.)  Such conclusory allegations are insufficient to plausibly

14   suggest entitlement to relief under Rule 8(a)'s federal pleading standard, much less

15   the heightened standards of Rule 9(b).  Because the Complaint fails to "articulate

16   the who, what, when, where, and how of the misconduct charged," Plaintiff's

17   CLRA and UCL claims fail to meet the particularity requirement of Rule 9(b) and

18   should be dismissed.  *Wright*, 2009 WL 3247148, at *6; *Kearns*, 567 F.3d at 1127-

19   28; *Marolda*, 672 F. Supp. 2d at 1003-05.

20   **C.    Because Plaintiff Fails to Allege Unlawful or Unfair Business**
            **Practices, She Has No UCL Claim.**
21

22           In addition to inadequately pleading her claims under Rule 9(b), Plaintiff

23   fails to set forth facts that plausibly state a claim for relief under the UCL.  The

24   UCL prohibits, inter alia, any "unlawful, unfair or fraudulent business act or

25   practice . . . ."  Cal. Bus. & Prof. Code § 17200; *Peterson v. Cellco P'ship*, 164 Cal.

26   App. 4th 1583, 1590, 80 Cal. Rptr. 3d 316 (2008).  Plaintiff alleges that First

27   Premier engaged in "unlawful" and "unfair" business practices.  (FAC ¶¶ 97-98.)

28   Plaintiff's allegations are unfounded.

                                          11

1          **1.**      **Plaintiff Fails to Allege Any "Unlawful" Business Practices.**

2         The "unlawful" prong of the UCL "'borrows' violations of other laws and

3 treats these violations, when committed pursuant to business activity, as unlawful

4 practices." *Peterson*, 164 Cal. App. 4th at 1590 (quoting *Farmers Ins. Exch. v.*

5 *Super. Ct.*, 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487 (1992)).  Here, Plaintiff alleges

6 First Premier's violation of the CLRA as the sole predicate for her "unlawful" UCL

7 claim.  (FAC ¶ 97.)  Because Plaintiff has no CLRA claim, as outlined in sections

8 IV.A and B above, her "unlawful" UCL claim also must be dismissed.  *Renick v.*

9 *Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1058 (9th Cir. 2002)

10 (UCL claim dismissed where "state [UCL] claim hinges on . . . rejected federal

11 claim"); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178, 107 Cal.

12 Rptr. 2d 209 (2001) (UCL claim "stand[s] or fall[s] depending on the fate of the

13 antecedent substantive causes of action"); *Rand v. Am. Nat'l Ins. Co.*, No. C-09-

14 0639, 2009 WL 2252115, at *3 (N.D. Cal. July 28, 2009).

15          **2.**      **Plaintiff Fails to Adequately Allege Any "Unfair" Business**
16                 **Practices.**

17         Plaintiff bases her "unfair" UCL claim on her allegation that First Premier

18 engaged in a "deceptive marketing scheme related to . . . Credit Protection."  (FAC

19 ¶ 98.)  To maintain a UCL claim for unfair business practices, Plaintiff must

20 adequately plead both that First Premier engaged in an unfair business practice and

21 that she suffered injury in fact and a loss of money or property as a result of First

22 Premier's unfair business practice.  *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 849,

23 70 Cal. Rptr. 3d 466 (2008).  Plaintiff has failed to adequately plead either of these

24 elements.

25          **a.**      **Plaintiff Alleges No "Unfair" Business Practices.**

26         Although the California Supreme Court has not yet defined the contours of

27 what may be considered unfair business practices for purposes of the UCL,

28 "conclusory and speculative" allegations cannot serve as the basis for any claim

sf-2940719

brought in federal court.  *Wright*, 2009 WL 3247148, at *5.  The lack of factual content in Plaintiff's Complaint regarding First Premier's alleged omissions and misrepresentations is fatal to Plaintiff's unfairness claim.  *Iqbal*, 129 S. Ct. at 1949-50.

Even if Plaintiff had adequately pled the alleged omissions and misrepresentations on which her claim rests, nowhere in her Complaint does she even attempt to set forth the requisite facts demonstrating that "'the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided.'"  *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532, at *23-24 (N.D. Cal. 2009) (quoting *Daughterty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006)).  Nor could Plaintiff claim that her injuries could not reasonably have been avoided, as the Credit Protection contract Plaintiff acknowledges she received (FAC ¶¶ 9, 43-45) clearly states, on the first page, in bold and italic lettering, that Credit Protection "is optional" and can be cancelled at any time within the first thirty (30) days after enrollment for "a full refund."  (Exs. 3 at 23 and 4 at 28.)

Moreover, Plaintiff's allegations are entirely contradicted by the clear and conspicuous disclosures set forth in the Welcome Kit she received.  (Exs. 3 and 4); *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (where the documents referenced in the complaint do not support plaintiff's claim, the complaint may be dismissed for failure to state a valid claim); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court need not accept as true allegations that contradict matters properly subject to judicial notice or presented by exhibit).  For example, at the heart of Plaintiff's Complaint are her allegations that First Premier failed to disclose the "lengthy list of exclusions for benefit eligibility that it uses to deny benefits to purchasers." (FAC ¶ 39; *see also*

13

¶¶ 9, 16, 52, 56.)   Directly contradicting those allegations, however, Plaintiff's Complaint refers extensively to the "list of exclusions" detailed in the Welcome Kit Plaintiff acknowledges she received shortly after enrollment.  (FAC ¶ 9, 21, 45-46, 64, 65.)  Because Plaintiff's allegations are both insufficient and contradicted by the Credit Protection documents upon which she relies to state her claim, Plaintiff's "unfair" UCL claim should be dismissed.

> **b.     Plaintiff Alleges No Injury or Loss of Money as the Result of First Premier's Alleged Misrepresentations.**

Plaintiff also fails to allege facts that plausibly suggest she "suffered an injury in fact" or "lost money or property as a result of such unfair competition." *Hall*, 158 Cal. App. 4th at 849; *Peterson*, 164 Cal. App. 4th at 1590 ("[O]nly plaintiffs who have suffered actual damage may pursue a private UCL action.  A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition.").  Since the passage of Proposition 64 by California voters in 2004, it has been axiomatic that any claim brought under the UCL must allege that the plaintiff herself has been harmed in some way "as a result of" the alleged acts of unfair competition. *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 812, 66 Cal. Rptr. 3d 543 (2007).  The "as a result of" language in the second prong "imposes a causation requirement" such that "the alleged unfair competition must have caused the plaintiff to lose money or property." *Hall*, 158 Cal. App. 4th at 849.; *In re Firearm Cases*, 126 Cal. App. 4th 959, 981, 24 Cal. Rptr. 3d 659 (2005) ("[t]he UCL provisions are not so elastic as to stretch the imposition of liability to conduct that is not connected to the harm by causative evidence").  This requirement was added in 2004 by California voters in reaction to "abusive UCL actions by attorneys whose clients had not been 'injured in fact.'" *Buckland*, 155 Cal. App. 4th at 812-13; *Peterson*, 164 Cal. App. 4th at 1590 (pre-amendment, the UCL was "subject to

14

abuse by attorneys who used it as the basis for legal 'shakedown' schemes and frivolous lawsuits" (internal quotation omitted)).

Although Plaintiff's Complaint includes bare allegations that she "suffered monetary damages as a direct and proximate result of" First Premier's alleged misrepresentations (FAC ¶ 84), missing from her Complaint are the factual allegations necessary to demonstrate that her claimed injury was caused by First Premier's alleged unfair competition.  Specifically, Plaintiff alleges that "[t]he misleading nature of First Premier's representations is illustrated by the Plaintiff's experience when she lost her job and was denied benefit payments [.]"  (FAC ¶ 41.) Plaintiff does not, however, allege that she qualified for benefits at the time she applied, or that she followed the proper claims procedure.  As a result, she has failed to allege that the "misleading nature of First Premier's representations" were in fact the cause of her alleged injury – the denial of Credit Protection benefits.

And while Plaintiff pleads facts that could be interpreted as "consistent" with her contention of unfair business practices, such facts "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (internal quotation and citation omitted).  Just a few of the "obvious alternative explanations" for denial of Credit Protection benefits that are suggested by the facts set forth in Plaintiff's Complaint are: (1) Plaintiff did not follow the claims procedure; (2) Plaintiff was not eligible for the Credit Protection benefits she applied for pursuant to the eligibility requirements that were disclosed in the Welcome Kit; and (3) Plaintiff's enrollment in Credit Protection had been terminated because her credit card account was "in default under the terms of [her] Credit Card Agreement."  (*See* Exs. 3 at 23-24, and 4 at 28-29.)  In light of such "obvious alternative explanation[s]," Plaintiff's Complaint fails to "'nudge[]'" her claims "'across the line from conceivable to plausible.'"  *Iqbal*, 129 S. Ct. at 1950-51 (quoting *Twombly*, 550 U.S. at 570).  Plaintiffs "unfair" UCL claim should therefore be dismissed.

15

sf-2940719

**D.      Plaintiff Has No "Claim" for Unjust Enrichment.**

There is no such thing as a cause of action for unjust enrichment under California law. *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003) ("there is no cause of action in California for unjust enrichment"); *Johns v. Bayer Corp.*, No. 09CV935, 2010 WL 476688, at *6 (S.D. Cal. Feb. 9, 2010) ("unjust enrichment . . . is not an independent cause of action"); *Walker v. Equity I Lenders Group*, No. 09cv325 WQH (AJB), 2009 WL 1364430, at *9 (S.D. Cal. May 14, 2009) ("a cause of action for unjust enrichment is not cognizable under California law"); *Wolph*, 2009 WL 2969467, at *5 ("unjust enrichment does not constitute a stand-alone cause of action"); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 966 ("there simply is no cause of action in California for unjust enrichment") (internal quotations omitted).  Rather, unjust enrichment is a basis for obtaining restitution and "does not lie" where, as here, an "'enforceable, binding agreement exists defining the rights of the parties.'"[6] *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*, No. 04-cv-147, 2007 WL 1994057, at *2 (S.D. Cal. Apr. 18, 2007) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)); *see also Melchior*, 106 Cal. App. 4th at 793.  Thus, Plaintiff's cardholder agreement with First Premier precludes her from asserting a claim for restitution on the basis of alleged unjust enrichment.

The outcome would be the same under South Dakota law, which governs Plaintiff's cardholder agreement with First Premier.  (Exs. 1 and 2.)  South Dakota law dictates that Plaintiff cannot maintain her claim for unjust enrichment in the face of an express contract with First Premier.  *Johnson v. Larson*, 2010 SD 20, at

---

[6] Plaintiff already seeks restitution in connection with her CLRA and UCL claims. (FAC ¶¶ 104-05, 118.)  As described above, for the same reasons Plaintiff's UCL and CLRA claims fail, she is not entitled to restitution. *See In re Late Fee Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 966.

sf-2940719

1    P8, 779 N.W.2d 412, 416 (S.D. 2010) ("[T]he equitable remedy of unjust

2    enrichment is unwarranted when the rights of the parties are controlled by an

3    express contract."); *Burch v. Bricker*, 2006 SD 101, at P18, 724 N.W.2d 604, 609-

4    10 (S.D. 2006) ("[Restitution for unjust enrichment] is unavailable when the rights

5    of the parties are fixed by the terms of a written contract.").

6        Because neither California nor South Dakota law recognizes Plaintiff's

7    unjust enrichment claim in the face of an express contract with First Premier, there

8    is no set of facts Plaintiff could prove that would support her claim.  Thus, the

9    Court should dismiss Plaintiff's unjust enrichment claim with prejudice.

10   **V.    CONCLUSION**

11       For all of the reasons set forth above, First Premier respectfully submits that

12   the Court should grant its motion and dismiss Plaintiff's Complaint.

13

14   Dated:        January 24, 2010              MORRISON & FOERSTER LLP

15

16                                    By:   /s/ Natalie Naugle

17                                          Gregory P. Dresser
                                            Natalie Naugle
18
                                            Attorneys for Defendants
19                                          FIRST PREMIER BANK and
                                            PREMIER BANKCARD
20

21

22

23

24

25

26

27

28

17